UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARRY ARPIN,<br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER SCOTT SEMPLE, et al.,<br>        Defendants. | No. 3:24-cv-1918 (SRU) |

## INITIAL REVIEW ORDER

The plaintiff, Barry Arpin, is a sentenced inmate in the custody of the Connecticut

Department of Correction ("DOC").[1]  He commenced this action *pro se* under 42 U.S.C. § 1983

against thirteen DOC employees: Commissioner Scott Semple, Commissioner Angel Quiros,

Warden Erfe,[2] Warden Falcone,[3] Captain Watson, Captain Morris, Lieutenant Ererle,

Lieutenant Boyd, and Correction Officers Kelly, Peracchio, Vedura, Wright and Zoto.   Compl.,

Doc. No. 1.   He primarily asserts claims for violation of his rights under the United States

---

[1]  I may "take judicial notice of relevant matters of public record." *Sanchez v. RN Debbie*, 2018 WL 5314916, at *2 (D. Conn. Oct. 26, 2018) (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)). The DOC website shows that Arpin was sentenced to an incarceration term of twenty years on March 7, 2011, and is now housed at Willard-Cybulski Community Reintegration Center. See *Inmate Information*, Conn. Dep't of Corr., http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=362018 (last visited May 9, 2025).
[2]  Arpin names Warden Erfie. Because the DOC website shows Scott Erfe served as Warden of Cheshire Correctional Institution from 2015 to 2019, I refer to this defendant as Warden Erfe. *See* https://portal.ct.gov/doc/facility/cheshire-ci.
[3]  Warden Falcone served as Warden of Garner Correctional Institution from 2013 to 2017. *See* https://portal.ct.gov/doc/facility/garner-ci.

Constitution while housed at DOC's Cheshire Correctional Institution ("Cheshire") and Garner

Correctional Institution ("Garner").   *Id.*   He seeks both individual and official capacity relief.[4]

After initial review of the complaint, I will permit some of Plaintiff's claims to proceed.

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoners' civil complaints and dismiss any

portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief

may be granted, or that seeks monetary relief from a defendant who is immune from such relief.

Although detailed allegations are not required, the complaint must include sufficient facts to

afford the defendants fair notice of the claims and the grounds upon which they are based and to

demonstrate a plausible right to relief.   *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).

Conclusory allegations are not sufficient.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570.   Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must

be construed liberally and interpreted to raise the strongest arguments that they suggest.'"   *Sykes*

*v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir.

2010) (discussing special rules of solicitude for *pro se* litigants).

## II.    ALLEGATIONS

Arpin alleges the following facts, which I consider to be true for purposes of initial

review.

---

[4] In his case caption, Arpin indicates that he sues the defendants in their individual capacities.   I construe his complaint to sue the defendants in both their individual and official capacities because he requests both damages and a declaratory judgment.   *Id.* at ¶¶ 104-106.

Arpin claims that he was subjected to a campaign of harassment after he lodged numerous complaints to Garner Warden Falcone, Captain Morris and Commissioner Semple in 2015, filed a writ of habeas corpus in superior court in 2016, and wrote a letter to a state senator in 2017, all to complain about the state of his mattress while housed at Garner.   Compl., Doc. No. 1, at ¶¶ 18, 21-23.

Arpin also alleges that he was discriminated against because he is "an ethnic & practicing Jew[.]"   *Id.* at ¶ 20.

Arpin believes that Captain Morris and Warden Falcone were contacted by the state senator's office, and then in retaliation transferred Arpin from Garner to Cheshire, a maximum security prison, on February 10, 2017.   *Id.* at ¶ 24.   He remained housed at Cheshire through May 10, 2018.   *Id.*

At Cheshire, Arpin was housed in a cell with a violent gang member, who threatened and verbally abused Arpin, stole from him, and encouraged other gang members to do the same.   *Id.* at ¶ 25.   Arpin submitted to Captain Watson numerous written and oral requests to be transferred in the interest of his safety.   *Id.* at ¶ 26.   Captain Watson was aware that Arpin was being harassed but left him in the unsafe housing placement.   *Id.* at ¶ 27.

After Arpin described his abusive situation to his wife on March 20, 2017, she spoke to Captain Watson about moving Arpin.   *Id.* at ¶ 28.   Captain Watson later subjected Arpin to verbal abuse and called him a "pussy" for sending his wife to fight his battles.   *Id.* at ¶ 29. Arpin was subsequently transferred to another unit within Cheshire.   *Id.*

Arpin received a notice of rejected correspondence—specifically, a photocopied drawing by his daughter—on March 21, 2017, and filed a grievance.   *Id.* at ¶¶ 30-31.

On March 29, 2017, Arpin was sent to the Assignment & Processing room, drug tested, and strip searched by six male and two female correctional officers (who each held video cameras).   *Id.* at ¶ 32.   Lieutenant Boyd directed Arpin to strip naked and to fondle his genitals in the presence of the female officers.   *Id.*   Lieutenant Boyd then placed Arpin in the Restrictive Housing Unit ("RHU").   *Id.*

The results from Arpin's urinalysis were not used in any proceedings.   *Id.* at ¶ 36. Arpin maintains that the drug testing was performed to intimidate him.   *Id.*

Arpin was issued a disciplinary report charging him with Conspiracy to Convey Contraband on the basis of the claim that the correspondence (the photocopied drawing) was infused with Suboxone.   *Id.* at ¶¶ 37.[5]   Lieutenant Boyd used a Nark II drug screening test to detect narcotics on the photocopied drawing.   *Id.* at ¶ 40.   According to the manufacturer's statement, Nark II tests are designed to confirm probable cause only and merely presumptively identify commonly abused substances.   *Id.*

Arpin's disciplinary hearing was held on April 17, 2017, beyond the seven business day deadline contained in Administrative Directive 9.5.   *Id.* at ¶ 43.   Prior to the disciplinary hearing, Correction Officer Kelly falsely advised Arpin that an advocate for a disciplinary hearing was provided only for inmates who did not speak English, and therefore, Arpin, who speaks English, did not need one.   *Id.* at ¶¶ 39, 45.   Kelly also failed to advise Arpin of his right to prepare a defense or to call witnesses at the hearing.   *Id.* at ¶ 45.   Arpin never received the laboratory test results or any evidence relevant to his charges.   *Id.* at ¶ 47.

---

[5] Arpin's allegations indicate that he received that Disciplinary Report on March 29, 2017.   *See id.* at ¶¶ 61, 71.

4

Disciplinary Hearing Officer ("DHO") Lieutenant Ererle rendered a guilty verdict on the basis of staff documentation without permitting Arpin an opportunity to prepare or present a defense. *Id.* at ¶ 46. DHO Ererle imposed four penalties on Arpin, including loss of Risk Reduction Earned Credit ("RREC"). Arpin claims that DHO Ererle's violated the administrative directives in conducting the hearing and deciding to impose four penalties. *Id.* at ¶¶ 49-50.

In May 2021, Arpin received pictures of the urinalysis test after multiple discovery and FOI requests. *Id.* at ¶ 51.

Arpin's wife was removed from his visitor list for seven years because she was assertedly the party responsible for the presence of the "Suboxone" detected on the photocopied drawing. *Id.* at ¶ 53. She was not restored to Arpin's visitor list until May 30, 2024. *Id.*

On April 20, 2017, Arpin mailed a letter to a private investigator, who had been retained by his attorney as part of his team. *Id.* at ¶¶ 55, 58. Arpin's letter concerned the investigation of facts for his habeas petition. *Id.* at ¶¶ 55, 58, 61. The envelope for the letter was clearly marked on both side with the words, "Privileged Correspondence." *Id.* at ¶ 55.

On April 21, 2017, Arpin's letter to the private investigator was opened and read by Lieutenant Boyd and Correction Officers Zoto, Wright, Peracchio and Verdura. *Id.* at ¶ 59. Arpin was not on a "mail review" status at the time. *Id.*

After Arpin was released from the RHU, Lieutenant Boyd subjected him to another strip search in which he was compelled to fondle his genitals, bend over, and spread his glutes in full view of six male correctional officers, two female nurses, and a female counselor. *Id.* at ¶ 62. Arpin was then placed in administrative detention "pending investigation." *Id.*

On April 21, 2017, Arpin received a disciplinary report for tampering with safety and security and for sending correspondence to his attorney's investigator. *Id.* at ¶¶ 64, 67. DHO Ererle coerced Arpin into pleading guilty at a hearing and imposed three sanctions, including a fifteen-day loss of RREC. *Id.* at ¶ 65. He was afforded no legal protection except for "options . . . presented by defendants Ererle [and] Kelly[.]" *Id.* at ¶ 66.

Arpin claims that the defendants have engaged in a campaign of harassment and retaliation for his protected activity including denying him a hernia operation. *Id.* at ¶ 69.

## III.    DISCUSSION

In a section entitled "Legal Claims," Arpin asserts numerous violations of his constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments for: (1) deliberate indifference to his safety; (2) retaliation and deprivation of his right to court access related to his complaints about his inadequate mattress; (3) deliberate indifference to his medical needs due to a failure to address his mattress issues; (4) deprivation of his due process rights, right against self-incrimination, and free speech arising from his disciplinary proceedings; (5) deprivation of his right to substantive due process by denying his wife visitation for seven years; (6) deprivation of court access for interference with his correspondence;[6] and (7) unreasonable strip searches. Compl., Doc. No. 1, at ¶¶ 89-99.

---

[6] Arpin also claims that the defendants breached his "Attorney Client Privilege" arising from interference with his correspondence. Compl., Doc. No. 1, at 9. Liberally construing Arpin's complaint, he may be asserting that the defendants' interference with his mail violated his right to counsel under the Sixth Amendment because the correspondence was directed to his habeas counsel's investigator. *Id.* at ¶ 61. But the Sixth Amendment right to effective assistance of counsel "only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions." *Bourdon v. Loughren,* 386 F.3d 88, 96 (2d Cir. 2004) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 555-57 (1987)); *see also Wolff v. McDonnell,* 418

Section 1983 of Title 42 provides that "[e]very person who, under color of any [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

## A.    Individual Capacity Claims against Semple, Quiros, and Erfe

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). That is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test

---

U.S. 539, 576 (1974) (noting that the "reach [of the Sixth Amendment] is only to protect the attorney-client relationship from intrusion in the criminal setting" and refusing to recognize claim that "would insulate all mail from inspection, whether related to civil or criminal matters"). Accordingly, any claim that the defendants' actions violated the Sixth Amendment is not plausible.

for supervisory liability" in order to hold a state official liable for damages under section 1983). "[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had." *Id.*

Arpin has not alleged any facts in the body of the complaint to suggest conduct by former Commissioner Semple, Commissioner Quiros or Warden Erfe that violated his constitutional rights.   Arpin alleges that he sent complaints about his mattress to Commission Semple, but a supervisory official's receipt of a communication, without more, is generally insufficient to establish the official's personal involvement in a section 1983 constitutional claim.   *See Adams v. Annucci*, 2023 WL 2664301, at *11 (S.D.N.Y. Mar. 28, 2023) (stating receipt of an inmate's letter, by itself, is not personal involvement); *see also McCrary v. Marks*, 836 F. App'x 73, 74 (2d Cir. 2021) (affirming summary judgment in favor of supervisor in First Amendment claim because "the most he has alleged is that [the supervisor] received his letter and directed someone at the TVPA to respond to it.   This is clearly not enough to state claim against [the supervisor].").

Absent any factual allegations to reflect that Semple, Quiros or Erfe had any personal involvement in the asserted violations of Arpin's rights, I cannot conclude that Arpin has stated plausible damages claims under 42 U.S.C. § 1983 against those high ranking officials.   *See Oh v. Quiros*, No. 3:24-CV-148 (SVN), 2024 WL 896605, at *3 (D. Conn. Mar. 1, 2024) (dismissing claims under section 1983 against Nurse Supervisor absent allegations about her conduct to violate his rights); *Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *5 (D. Conn. May 8, 2020) (dismissing all claims against defendants where complaint

established no connection between defendants and alleged constitutional violations).

Accordingly, Arpin has not stated any plausible claims against Semple, Quiros, and Erfe in their

individual capacities.

### B.    Denial of Visitation

Arpin asserts that the defendants violated his First Amendment right to association and

his Fifth and Fourteenth Amendment substantive due process rights by banning visitation by his

wife. The Fifth Amendment Due Process Clause, however, applies only to federal, not state,

inmates. *See Jackson v. Walker*, No. 3:22-CV-1951(OAW), 2022 WL 16573562, at *3 (D. Conn.

Nov. 1, 2022) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 & n.3 (2d Cir. 2009)).   As a state

prisoner, Arpin cannot assert a Fifth Amendment due process claim, and the Court considers the

claim to be asserted only under the Fourteenth Amendment Due Process Clause.

The Supreme Court has recognized a right to associate with others in intimate

relationships, but "[t]he source of the intimate association right has not been authoritatively

determined." *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999). Courts have thus considered claims

implicating the intimate association right under both the Fourteenth Amendment Due Process

Clause and the First Amendment. *Id.* However, in the prison context, the Supreme Court has also

noted that "freedom of association is among the rights least compatible with incarceration" and

"[s]ome curtailment of that freedom must be expected in the prison context." *Overton v.

Bazzetta*, 539 U.S. 126, 131 (2003). Therefore, if prison officials' actions infringe on a prisoner's

freedom to associate, the prisoner's constitutional right is not violated if the action "bear[s] a

rational relation to legitimate penological interests." *Id.* at 132. Here, Arpin alleges that the

defendants banned visitation by Arpin's wife for seven years, until May 30, 2024, as a result of

the allegedly erroneous decision in 2017 that his wife was responsible for sending the photocopied drawing that contained Suboxone. Compl., Doc. No. 1, at ¶¶ 53, 96. On initial review, I cannot determine whether such a lengthy ban on visitation was rationally related to legitimate penological interests. *See Malavé v. Weir*, 2018 WL 500644, at *5 (D. Conn. Jan. 5, 2018) (granting qualified immunity to defendants because two-year ban on visitation did not violate prisoner's right to intimate association under clearly established law, noting that the Court in *Overton* upheld a two-year ban but acknowledged that a lengthier ban may "present different consideration."). *See also Peña v. Czermcha*, 2024 WL 4388277, at *11 (D. Conn. Oct. 2, 2024). Accordingly, I will permit Arpin's claim of denial of intimate association to proceed for further development against Defendants Watson, Boyd, and Ererle in their individual capacities.

### C.    Denial of Hernia Operation

At paragraph 69 of his complaint, Arpin refers to "continued denial" of a hernia operation.   Liberally construing his complaint, I conclude that he is asserting an Eighth Amendment claim arising out of a continuing deprivation of medical care.   In *Estelle v Gamble*, the Supreme Court held that the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." 429 U.S. 97 at 104 (1976). Deliberate indifference may not only be exhibited "by prison doctors in their response to the prisoner's needs," but also "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. To state a plausible claim that the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment, Arpin must allege that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,'

and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'"    *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).

Regarding the first prong, Arpin has not alleged facts to describe a sufficiently serious deprivation of medical care, namely, that the denial of his hernia operation "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (internal quotation marks omitted). All Arpin alleges is that he has been denied a hernia operation. Notably, he does not allege that the hernia causes him significant pain, or that it is worsening in the absence of medical care. But medical conditions "vary in severity," and thus "a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." *Id.* at 136-37. Moreover, courts recognize that "not every hernia rises to the level of a serious medical need." *Jenkins v. Trachtman*, 2017 WL 7163935, at *3 (N.D.N.Y., 2017). *See also McQueen v. Cty. of Albany*, 2010 WL 338081, at *11 (N.D.N.Y., 2010) ("[A]t worst, plaintiff's hernia caused him to suffer intermittent pain and/or discomfort, which is patently insufficient to objectively prove that his condition was serious."); *Day v. Lantz*, 2009 WL 801612, at *3 (D. Conn. Mar. 25, 2009) (collecting cases).   I therefore cannot presume, on the basis of Arpin's bare allegation that he has been denied a hernia operation, that Arpin has satisfied the objective prong of a deliberate indifference claim.

Regarding the second prong, no non-conclusory facts support an inference that any defendant was aware of, but nonetheless ignored, Arpin's serious need for a hernia operation. *See Salahuddin v. Goord,* 467 F.3d 263, 280-81 (2d Cir. 2006) ("This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate

11

harm will result."). Accordingly, I conclude that Arpin's Eighth Amendment claim of deliberate indifference to his need for a hernia operation must be dismissed as not plausible. 28 U.S.C. § 1915A(b)(1).

### D.     Administrative Directive Violation

Arpin complains that the defendants violated the standards set by DOC Administrative Directives. But "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted). Thus, I dismiss such claims under 28 U.S.C. § 1915A(b)(1).

### E.     Statute of Limitations

Arpin alleges that the defendants' actions, occurring from the time he started complaining about his mattress at Garner in 2015 through the District Administrator's denial of his second disciplinary appeal in April 2017, violated various other of his constitutional rights. Thus, it is clear on the face of Arpin's complaint that his remaining federal constitutional claims are time barred under the relevant statute of limitations. Although the statute of limitations is generally raised as an affirmative defense, the court may dismiss a claim where the allegations of the complaint demonstrate that the relief sought is time-barred. *See Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980); *Reese v. Lightner*, 2019 WL 2176342, at *3 (D. Conn. May 20, 2019) (collecting cases).

A federal court must look to state law to determine the applicable statute of limitations in a section 1983 suit. In Connecticut, that period is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (holding that the three-year personal-injury statute of limitations

period set forth in Conn. Gen. Stat. § 52–577 is the applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983).

Federal law, however, controls when the cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). Under established precedent in the Second Circuit, the accrual date for section 1983 actions occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (cleaned up). The instant complaint was filed on December 2, 2024, the date Arpin signed the complaint.[7] Any claim that accrued before December 2, 2021 is therefore time-barred.

According to Arpin's allegations, the majority of his claims of constitutional violations accrued before December 2, 2021. His claims that he was denied procedural due process, that he was subjected to unreasonable searches, and that he was subjected to cruel and unusual punishment all relate to alleged conduct occurring between 2015 and 2017. Thus, those claims are barred by the statute of limitations.

Arpin's only claim that is not barred by the statute of limitations is his claim that he was denied a constitutionally protected right to freedom of association. Though that claim ordinarily

---

[7] A *pro se* prisoner's complaint is deemed filed at the moment of delivery to prison authorities for forwarding to the district court. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993). Courts in this Circuit have assumed that a prisoner hands his or her petition or complaint to a prison staff member to be mailed or e-filed to the court on the date that the prisoner signed it. *See Lehal v. Cent. Falls Det. Facility Corp.*, 2019 WL 1447261, at *19 (S.D.N.Y. Mar. 15, 2019) ("In the absence of other evidence as to when the prisoner actually delivered his complaint to prison officials, the court assumes that a *pro se* plaintiff hands his complaint to prison officials for mailing on the date [o]n which he signs it.").

would begin to accrue when Arpin knew or had reason to know of the injury, the limitations period may be tolled because of the existence of a "continuing course of conduct." Like the limitations period, tolling provisions for section 1983 actions derive from state law.  *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. . . .").   Connecticut law permits tolling because of the existence of a continuing course of conduct. *See Flannery v. Singer Asset Fin. Co.*, *LLC*, 312 Conn. 286, 311-13 (2014).   To establish the existence of a continuing course of conduct, a plaintiff must allege that the defendant: (1) engaged in wrongful conduct against the plaintiff; (2) owed the plaintiff a continuing duty that was related to the alleged initial misconduct; and (3) continually breached that duty by engaging in subsequent misconduct towards the plaintiff. *Id.*   Arpin alleges that his wife's visitation was not restored until May 30, 2024. *See* Compl., Doc. No. 1, at ¶ 53. Accordingly, because the defendants allegedly continued to breach Arpin's right to freedom of association through 2024, that claim is timely.   All of Arpin's other federal claims are dismissed because they are barred by the statute of limitation.   28 U.S.C. § 1915A(b)(1).

### F.    State Law Claims

Arpin also asserts a state law claim of intentional infliction of emotional distress against defendants Watson and Boyd.   Arpin is not clear, however, which of defendants Watson and Boyd's alleged actions form the basis of his state law claim.   However, like the federal claims discussed above, a claim for intentional infliction of emotional distress has a 3-year statute of limitations under Connecticut law.   *Geiger v. Carey*, 170 Conn. App. 459, 499 n.18 (2017). Therefore, for the same reasons as stated above, any intentional infliction of emotional distress

claim Arpin intended to assert regarding his conditions of confinement, defendants' unreasonable search of his person, or his disciplinary hearing in 2017 are barred by the statute of limitations. To the extent Arpin intended to assert a claim of intentional infliction of emotional distress regarding his denial of visitation with his wife until May 30, 2024, however, that claim is within the three-year statute of limitations.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000).   Arpin alleges that, after his wife spoke with defendant Watson about Arpin's condition, the defendants engaged in a "campaign of harassment" against him, ultimately culminating in the April 17, 2017 disciplinary hearing that resulted in Arpin's wife's seven-year visitation ban.   *See* Compl., Doc. No. 1, at ¶¶ 29-54.   I assume for purposes of this initial review that the seven-year ban caused Arpin severe emotional distress.   Liberally construed, Arpin's allegations make out a plausible claim of intentional infliction of emotional distress.   Accordingly, Arpin may proceed on his intentional infliction of emotional distress claim against defendants Watson and Boyd in their individual capacities.

### G.    Official Capacity Claims

Finally, as stated previously, though Arpin's case caption indicates that he sues the defendants in their individual capacities, I construe his complaint to sue the defendants in both their individual and official capacities because he requests both damages and a declaratory

judgment.  *Id.* at ¶¶ 104-106.   Official capacity claims for monetary damages against state

employees are barred by the Eleventh Amendment.   *See, e.g., Kentucky v. Graham*, 473 U.S.

159, 169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh

Amendment bars a damages action against a State in federal court.").   As a result, to the extent

that Arpin seeks damages against any of the defendants in their official capacities, those claims

must be dismissed.

A claim for injunctive or declaratory relief may proceed against a defendant in his or her

official capacity, only to the extent that an ongoing constitutional violation is alleged.   *See Va.*

*Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*,

209 U.S. 123 (1908)).   Arpin's allegations describe violations of his rights that occurred in the

past.   Accordingly, Arpin's official capacity claims must be dismissed as not plausible.

### IV.     Motion for Appointment of Counsel

Arpin also filed a motion to appoint counsel. Doc. No. 14. The Second Circuit has

cautioned against the routine appointment of counsel and reiterated the importance of requiring

an indigent plaintiff to demonstrate the likely merit of his claims before counsel is appointed.

*See, e.g., Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 203–04 (2d Cir. 2003);

*Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). For example, even if a claim is not

frivolous, "counsel is often unwarranted where the indigent's chances of success are extremely

slim." *Ferrelli*, 323 F.3d at 204 (citation and internal quotation marks omitted).

The current record consists only of Arpin's complaint.   At this time, the Court is unable

to assess the likely merit of the Arpin's claim.   Thus, the motion for appointment of counsel is

denied without prejudice as premature.   Arpin may refile his motion at a later stage of the litigation.

**ORDERS**

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's individual capacity claims for (1) denial of free association in violation of the First and Fourteenth Amendment against Captain Watson and Lieutenants Boyd and Ererle; (2) intentional infliction of emotional distress in violation of Connecticut state law against Captain Watson and Lieutenant Boyd.

All other claims, including official capacity claims, are DISMISSED without prejudice under 28 U.S.C. § 1915A.   I instruct the clerk to terminate the defendants Semple, Quiros, Erfe, Falcone, Morris, Kelly, Peracchio, Vedura, Wright, & Zoto from this action.

I afford Plaintiff one opportunity to file an amended complaint, within 30 days of this Order, if he believes in good faith that he can correct the deficiencies identified in this Initial Review Order.   Plaintiff is advised that any amended complaint will completely replace his prior complaint in this action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

(2) The clerk shall verify the current work addresses for against Captain Watson and Lieutenants Boyd and Ererle with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.   If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on

that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall mail a courtesy copy of complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.   If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.   Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order.   Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.   The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c) provides that he MUST notify the Court.   Failure to do so can result in the

dismissal of the case.   Plaintiff must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.   He should also notify the defendants or defense counsel of his new address.

It is so ordered.

Dated at Bridgeport, Connecticut this 9th day of May 2025.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

19