**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| BARRY ARPIN,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>COMMISSIONER SCOTT SEMPLE, et<br>al.,<br>　　　　Defendants. | No. 3:24-cv-1918 (SRU) |

## RULING ON MOTION TO DISMISS

The plaintiff, Barry Arpin, is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC").[1]   He commenced this action *pro se* under 42 U.S.C. § 1983 against Commissioner Scott Semple, Commissioner Angel Quiros, Warden Erfe, Warden Falcone, Captain Watson, Captain Morris, Lieutenant Eberle,[2] Lieutenant Boyd, and Correction Officers Kelly, Peracchio, Vedura, Wright and Zoto.   *See* Compl., Doc. No. 1.   After initial review under 28 U.S.C. § 1915A, I concluded that Arpin could proceed on his individual capacity claims for: (1) denial of his right to free association in violation of the First and Fourteenth Amendments against Captain Watson and Lieutenants Boyd and Eberle; and (2) intentional infliction of emotional distress under Connecticut state law against Captain Watson

---

[1]  I may "take judicial notice of relevant matters of public record."   *Sanchez v. RN Debbie*, 2018 WL 5314916, at *2 n.4 (D. Conn. Oct. 26, 2018) (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)). The publicly available DOC website shows that Arpin was sentenced to twenty years in prison on March 7, 2011 and is now housed at Willard-Cybulski Community Reintegration Center.   *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=362018.
[2]  Although Arpin's complaint named Lieutenant Ererle as a defendant, the Defendants confirm that the proper spelling of that defendant's last name is Eberle.   *See* Notice of Appearance, Doc. No. 22. Therefore, I refer to him as Lieutenant Eberle in this ruling.   I request the clerk to correct the spelling of his last name to Eberle on the docket.

1

and Lieutenant Boyd.   *See* Initial Review Order ("IRO"), Doc. No. 15.   I dismissed Arpin's other claims, including his official capacity claims.   *Id.* at 17.

Defendants filed a motion to dismiss Arpin's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   *See* Defs.' Mot. to Dismiss, Doc. No. 23.   Arpin filed an objection to Defendants' motion to dismiss.   *See* Pl.'s Obj. Re Mot. to Dismiss, Doc. No. 25. Defendants then filed a reply memorandum.   *See* Defs.' Reply to Pl.'s Obj. to Mot. to Dismiss, Doc. No. 30.   Because Defendants' reply included a new argument that Arpin's freedom of association claim should be dismissed under the doctrine of collateral estoppel, I permitted Arpin to file a sur-reply to respond to that argument.   *See* Order, Doc. No. 32.   Arpin timely filed his sur-reply on January 15, 2026.   *See* Pl.'s Obj. to Defs.' Response, Doc. No. 35.

For the following reasons, the Defendants' Motion to Dismiss, Doc. No. 23, is **GRANTED**.

## I.      ALLEGATIONS

Arpin makes the following allegations about Captain Watson and Lieutenants Boyd and Eberle.   I consider his allegations to be true for purposes of ruling on the motion to dismiss.

On February 17, 2017, Arpin transferred from Garner to Cheshire Correctional Institution ("Cheshire C.I."), where he remained until May 10, 2018.   Compl., Doc. No. 1, ¶ 24.

During his time at Cheshire C.I., Arpin was housed in a cell with a violent gang member, who threatened and verbally abused him, stole from him, and encouraged other gang members to do the same.   *Id.* ¶ 25.   Concerned about his safety, Arpin submitted numerous written and oral requests to Captain Watson that asked for a cell transfer.   *Id.* ¶ 26.   Captain Watson knew that Arpin was being harassed but did not move Arpin from his cell.   *Id.* ¶ 27.

2

After Arpin described his situation to his wife on March 20, 2017, Arpin's wife spoke to Captain Watson about moving Arpin. *Id.* ¶ 28. Captain Watson later subjected Arpin to verbal abuse and called Arpin a "pussy" for sending his wife to fight his battles. *Id.* ¶ 29. Arpin was subsequently transferred to another unit within Cheshire C.I. *Id.*

On March 21, 2017, Arpin received a notice of rejected correspondence (specifically, a photocopied drawing by his daughter) and filed a grievance. *Id.* ¶¶ 30-31.

On March 29, 2017, Arpin had to go the Assignment and Processing ("A&P") room, where six male and two female correctional officers—who each held video cameras—drug tested and strip searched him. *Id.* ¶ 32. Lieutenant Boyd directed Arpin to strip naked and to fondle his genitals in the presence of the female officers. *Id.* Lieutenant Boyd then placed Arpin in the Restrictive Housing Unit ("RHU"). *Id.*

Around that time, Arpin received a disciplinary report charging him with Conspiracy to Convey Contraband because testing revealed the presence of Suboxone on the photocopied image drawn by Arpin's daughter. *Id.* ¶ 37. Lieutenant Boyd used a Nark II drug screening test to detect narcotics on the photocopied drawing. *Id.* ¶ 40. According to the manufacturer's statement, Nark II tests are "designed to confirm probable cause only" and to "merely presumptively identify [] commonly abused substances." *Id.* (internal citation omitted).

On April 17, 2017, Disciplinary Hearing Officer ("DHO") Lieutenant Eberle presided at Arpin's disciplinary hearing and rendered a guilty verdict. *Id.* ¶¶ 43, 46. DHO Eberle imposed four penalties on Arpin, including the loss of Arpin's Risk Reduction Earned Credit ("RREC"). *Id.* ¶ 49.

3

Arpin's wife was removed from his visitor list for seven years because she was considered the party responsible for the "Suboxone" detected on the photocopied drawing. *Id.* ¶ 53. She was not restored to Arpin's visitor list until May 30, 2024. *Id.*

After Arpin's release from the RHU, Lieutenant Boyd subjected him to another strip search in which he was compelled to fondle his genitals, bend over, and spread his glutes in full view of six male correctional officers, two female nurses, and a female counselor. *Id.* ¶ 62. Arpin was then placed in administrative detention "pending investigation." *Id.*

On April 21, 2017, Arpin received a disciplinary report for tampering with safety and security and for sending correspondence to his attorney's investigator. *Id.* ¶¶ 64, 67. DHO Eberle coerced Arpin into pleading guilty at a hearing and imposed three sanctions, including a fifteen-day loss of Arpin's RREC. *Id.* ¶ 65.

## II.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."   550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").   The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."   *Twombly*, 550 U.S. at 555 (quotation marks omitted).   Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely."   *Id.* at 556 (quotation marks omitted).

It is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"   *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## III.   DISCUSSION

Arpin asserts that his wife was removed from his visitor list for seven years because correctional officials wrongly concluded in 2017 that she was responsible for sending the photocopied drawing that contained Suboxone.   Compl., Doc. No. 1, ¶¶ 53, 96.

I noted on initial review that courts have considered claims implicating the intimate association right under both the First Amendment and the Fourteenth Amendment Due Process

Clause, but "[t]he source of the intimate association right has not been authoritatively determined." *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999). The Supreme Court has observed that "freedom of association is among the rights least compatible with incarceration," and "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Therefore, prison officials do not infringe a prisoner's associational rights when a prison restriction "bear[s] a rational relation to legitimate penological interests." *Id.* at 132. On initial review, I could not assess whether the lengthy seven-year removal of Arpin's wife from his visitor list was rationally related to legitimate penological interests, and so I permitted Arpin's First and Fourteenth Amendment deprivation of intimate association claim against Captain Watson and Lieutenants Boyd and Eberle to proceed beyond initial review. IRO, Doc. No. 15, at 9-10 (citing cases).

In their motion to dismiss, Defendants argue that Arpin's First and Fourteenth Amendment claim of intimate association deprivation must be dismissed because (1) Arpin has not alleged that any defendant was personally involved in the removal of his wife from his visitor list; and (2) his claim is time-barred under the relevant three-year statute of limitations. *See* Defs.' Mem. in Support of Mot. to Dismiss, Doc. No. 23-1. After Arpin argued that his deprivation of intimate association claim was tolled by his state habeas action, *see* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, doc. no. 29, the Defendants submitted a reply asserting that Arpin's claim is barred under the doctrine of collateral estoppel. *See* Defs.' Reply to Pl.'s Obj. to Mot. to Dismiss, Doc. No. 30.

I now conclude that Arpin's deprivation of intimate association claim must be dismissed.

**A.    Time Bar and Tolling**

A court may dismiss a claim where the allegations of the complaint demonstrate that the relief sought is time-barred. *See Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980); *Reese v. Lightner*, 2019 WL 2176342, at *3 (D. Conn. May 20, 2019) (collecting cases). A federal court must look to state law to determine the applicable statute of limitations in a section 1983 suit. In Connecticut, that period is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (holding that the three-year personal-injury statute of limitations set forth in Conn. Gen. Stat. § 52–577 is the applicable statutory limitations period for actions brought under 42 U.S.C. § 1983). Federal law controls when the cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (emphasis in original). Under established precedent in the Second Circuit, the accrual date for section 1983 actions occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (cleaned up). The instant complaint was filed on December 2, 2024, the date Arpin signed the complaint.[3] Absent tolling then, any claim that accrued before December 2, 2021 is time-barred.

I explained on initial review that Arpin's intimate association claims under section 1983 would normally begin to accrue when Arpin knew or had reason to know of the injury, but the limitations period may be tolled. IRO, Doc. No. 15, at 13-14. I also construed Arpin's

---

[3] A *pro se* prisoner's complaint is deemed filed when it is delivered to prison authorities for forwarding to the district court. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993). Courts in the Second Circuit have assumed that a prisoner hands their petition or complaint to a prison staff member to be mailed or e-filed to the court on the date that the prisoner signs it. *See Lehal v. Cent. Falls Det. Facility Corp.*, 2019 WL 1447261, at *19 (S.D.N.Y. Mar. 15, 2019) ("In the absence of other evidence as to when the prisoner actually delivered his complaint to prison officials, the court assumes that a *pro se* plaintiff hands his complaint to prison officials for mailing on the date in which he signs it.").

allegations to suggest that his intimate associate deprivation claims were tolled under the

"continuing course of conduct" doctrine until May 30, 2024.   *Id*. at 14.

Connecticut law permits tolling of the statute of limitations for tort actions when there

is fraudulent concealment of the cause of action or a continuing course of conduct by the

defendants.[4]   *Bernier v. Travelers Prop. Causalty Ins. Co.*, 2025 WL 2379310, at *20 (D. Conn.

Aug. 15, 2025) (citing *Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 432-435

(2013)).[5]   In addition, during the COVID-19 pandemic, Connecticut Governor Ned Lamont

issued Executive Orders 7G and 10A, which tolled statutes of limitations in Connecticut from

March 19, 2020 until March 1, 2021.   *Rutka v. City of Meriden*, 2024 WL 4349033, at *8 (D.

Conn. Sept. 30, 2024).

Here, Arpin alleges that his wife was removed from his visitor list for seven years until

May 30, 2024.   Compl., Doc. No. 1, ¶ 53.   On initial review, I concluded that Arpin's First and

Fourteenth Amendment intimate association claim was not time-barred because Arpin alleged

that the Defendants continued to breach his intimate association right through May 30, 2024.

IRO, Doc. No. 15, at 14.   After further review, I now conclude that Arpin's allegations do not

---

[4] Arpin has not alleged facts to suggest that any defendant intentionally concealed any facts from him relevant to the alleged violation.   To prove fraudulent concealment, a plaintiff must allege: "(1) the defendants' actual awareness . . . of the facts necessary to establish the plaintiff's cause of action; (2) the defendants' intentional concealment of these facts from the plaintiff; and (3) the defendants' concealment of these facts was for the purpose of obtaining delay on the plaintiff's part in filing a complaint on his cause of action."   *Macellaio v. Newington Police Dept.*, 145 Conn. App. 426, 432–33 (2013) (internal citation omitted).

[5] "[T]he equitable tolling doctrine . . . is one to which the courts may resort when no other tolling doctrines are applicable[.]"   *Bernier v. Travelers Prop. Causalty Ins. Co.*, 2025 WL 2379310, at *24 (D. Conn. Aug. 15, 2025) (quoting *Bednarz v. Eye Physicians of Cent. Connecticut, P.C.*, 287 Conn. 158, 167 n.8 (2008)).   As I have previously observed, Conn. Gen. Stat. § 52-577 is generally not subject to the doctrine of equitable tolling (even when applied to a section 1983 claim) because it has been labeled a "statute of repose,"—in contrast to a statute of limitations—and "sets a fixed limit after which the tortfeasor will not be held liable."   *Carter v. Univ. of Conn.*, 2006 WL 2130730, at *3 (D. Conn. July 28, 2006), *aff'd*, 264 F. App'x 111 (2d Cir. 2008).

plausibly support an inference that any defendant acted to deprive Arpin of his intimate association with his wife beyond his transfer out of Cheshire C.I. on May 10, 2018.

To establish the existence of a continuing course of conduct, a plaintiff must allege that the defendant: (1) engaged in wrongful conduct against the plaintiff; (2) owed the plaintiff a continuing duty that was related to the alleged initial misconduct; and (3) continually breached that duty by engaging in subsequent misconduct towards the plaintiff. *Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 313 (2014) (quoting *Witt v. St. Vincent's Medical Center*, 252 Conn. 363, 370 (2000)). "The gravamen of the continuing course of conduct doctrine is that a duty continues after the original wrong is committed," and absent a continuing special relationship, "there must be a subsequent wrongful act that is related to the prior [wrongdoing]." *Id*. at 321 (internal citation omitted); *see also Essex Ins. Co. v. William Kramer & Assocs., LLC,* 331 Conn. 493, 504 (2019) (explaining plaintiff may plead "*either* a special relationship between the parties giving rise to such a continuing duty *or* some later wrongful conduct of a defendant related to the prior act") (emphasis in original).[6]

Arpin makes several allegations that seek to support his deprivation of intimate association claim against the Defendants. He asserts that Captain Watson was aware that other inmates harassed Arpin but that Watson failed to take any remedial action and instead subjected Arpin to verbal abuse before his transfer to another unit within Cheshire C.I. Compl., Doc. No. 1, ¶¶ 28-29. Arpin also claims that Lieutenant Boyd subjected him to strip searches, forced him

---

[6] Courts have observed that a special relationship arises in the context of attorney-client or physician-patient relationships, or "some related sort of fiduciary-type relationship in which one party reasonably reposes trust in the other to exercise continuing care on his behalf." *See Bernier v. Travelers Prop. Causalty Ins. Co.*, 2025 WL 2379310, at *22 (D. Conn. Aug. 15, 2025) (quoting *Partitions, Inc. v. Blumberg Assocs., Inc.*, 2001 WL 1332174, at *5 (Conn. Super. Ct. Oct. 9, 2001)).

to undergo a drug test on which the disciplinary report was based, and seized Arpin's outgoing privileged correspondence. *Id.* ¶¶ 32, 40, 59, 62. Finally, Arpin asserts that DHO Eberle decided that Arpin was guilty of conspiracy to convey contraband into the facility and coerced Arpin to plead guilty to tampering with safety and security. *Id.* ¶¶ 46, 65.

Those allegations do not suggest that either Watson or Boyd were involved with the decision to remove Arpin's wife from his visitor list during the time Arpin was housed at Chesire C.I. or after his transfer from Cheshire C.I. on May 10, 2018. Although DHO Eberle adjudicated Arpin's guilt for his disciplinary charges of conspiracy to convey contraband, there are no facts to support an inference that DHO Eberle was involved in the decision to remove Arpin's wife from the visitor list. Likewise, no facts indicate that the Defendants had a special relationship with Arpin after he transferred away from Cheshire C.I. Therefore, the continuing course of conduct by the Defendants ended no later than May 10, 2018.

Accordingly, Arpin's intimate association claim is untimely even with the suspension of the statute of limitations outlined in the Governor's COVID-related Executive Order. That Order took effect on March 19, 2020, which was 679 days after Arpin was transferred from Cheshire C.I. on May 10, 2018. After the limitations period began running on March 1, 2021, Arpin had 416 days—or until April 21, 2022—to timely file his intimate association claims against Captain Watson and Lieutenants Boyd and Eberle. But Arpin did not commence this action until December 2, 2024, more than two years after that deadline.

Arpin argues that his intimate association claim was tolled until he exhausted his state court remedies. *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, Doc. No. 29, at 7; *see also Arpin v. Comm'r of Correction*, 2022 WL 1046296, at *3 (Conn. Super. Ct. Feb. 28, 2022) ("The

petitioner . . . argued that his due process rights have been violated because his wife was indefinitely removed from his visitor list after DOC alleged that she attempted to send him drugs through the mail."). I note that the Connecticut Appellate Court dismissed Arpin's appeal on October 17, 2023, *Arpin v. Comm'r of Correction*, 221 Conn. App. 904 (2023), and that the Connecticut Supreme Court denied his petition for certification to appeal on January 4, 2024. *Arpin v. Comm'r of Correction*, 348 Conn. 933 (2024).

Arpin's argument is unavailing. "[A] plaintiff's pursuit of a state remedy . . . does not toll the statute of limitations for filing a claim pursuant to section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007). Accordingly, courts in the Second Circuit have repeatedly refused to toll section 1983 claims brought by prisoners merely because the prisoner pursued a state court remedy prior to filing a case in federal court. *See, e.g.*, *Cancel v. Mazzuca*, 2003 WL 1702011, at *3 (S.D.N.Y. Mar. 28, 2003) ("[W]e find no reason to toll the statute of limitations during the period which [the plaintiff] pursued his [state court] Article 78 proceeding[.]"); *Horton v. Schenectady Cnty.*, 2023 WL 5777530 (N.D.N.Y. July 17, 2023) ("[P]laintiff states that he was pursuing state court remedies until 2019, but that does not toll the statute of limitations."); *Beaman v. New York*, 2025 WL 3042027 (N.D.N.Y. Oct. 31, 2025), at *4 ("[P]laintiff's pursuit of remedies in state court does not create a basis for tolling or extending the limitations period related to his Section 1983 claims in this action.").

Therefore, I grant the motion to dismiss Arpin's intimate association claim because it is time-barred.

**B.      Intentional Infliction of Emotional Distress**

On initial review, I permitted Arpin to proceed on his state law claim of intentional infliction of emotional distress against the Defendants.   Because there are no federal law claims remaining, I decline to exercise supplemental jurisdiction over Arpin's claims arising under state law.   *See* 28 U.S.C. § 1367(c)(3); *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334, 337 (2d Cir. 2011) (summary order) (advising that "where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims").   Accordingly, Arpin's state law claim of intentional infliction of emotional distress is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss, Doc. No. 23, is **GRANTED**.   The clerk is instructed to close this case.

SO ORDERED at Bridgeport, Connecticut this 19th day of March 2026.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

12